For these reasons I believe the judgment should be affirmed, with costs.

CLARKE, J., concurs.

---

## EAGLE SAVINGS & LOAN CO. v. BEAKEY et al.

(Supreme Court, Appellate Division, Second Department.    April 10, 1914.)

1. BUILDING AND LOAN ASSOCIATIONS (§ 41*)—SALE OF STOCK—EVIDENCE.

In an action by a building and loan association, evidence held to show that it was stated to the defendant borrower that his stock would be paid for in 16 years.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. §§ 81–85; Dec. Dig. § 41.*]

2. EVIDENCE (§ 441*)—PAROL EVIDENCE—ADMISSIBILITY TO VARY WRITTEN INSTRUMENT.

Where the contract for the purchase of stock in a building and loan association by borrowing members was complete on its face, and provided that payments should continue until such amounts, together with the dividends, should equal the face of the shares, parol evidence is inadmissible to show that the real agreement was that the shares should be matured in 16 years.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

3. BUILDING AND LOAN ASSOCIATIONS (§ 8*)—ACTIONS—EVIDENCE—FRAUD.

A statement by the officers of a building and loan association to a borrowing member that the stock he purchased would be paid for in 16 years is a statement of opinion, and is not a false representation warranting cancellation of the contract; the dividends at that time being 16 per cent.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. § 10; Dec. Dig. § 8.*]

Appeal from Special Term, Kings County.

Action by the Eagle Savings & Loan Company against Henry F. Beakey and another, consolidated with an action by the defendants against plaintiff.    From a judgment for plaintiff, defendants appeal. Affirmed.

See, also, 145 N. Y. Supp. 1121.

The opinion of Blackmar, J., at Special Term, is as follows:

The contract relation between the plaintiff and defendant was authorized by the statutes of the state of New York.    This included the payment by the defendant of a bonus of $950 on his loan and an additional 1 per cent. upon the first mortgage without violating the usury law.    His agreement was to pay installments upon the shares subscribed for by him until such time as such installments, together with the dividends allotted to him by the company, should equal the amount of the shares subscribed for, and that, when the shares subscribed for were fully paid, they should be applied to the payment or discharge of the mortgage.    These provisions are plainly set forth in the bond, mortgage, certificate of stock, and in the articles of association of the plaintiff, which are all part of the contract.

[1] The defendant claims that it was part of the contract that he should receive 15 per centum a year dividends upon the payments of installments upon his subscription to the capital stock, and that thereby the stock would be matured and the mortgage paid within 16 years.    There are indications upon the

*For other cases see same topic & §.NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

face of the papers that the parties believed that the shares would be matured in 16 years.

The articles of association provide that there may be issued to borrowing members only variations of class A shares, to be termed class A 8, class A 16, and class A 21, upon which the monthly dues should be 50 cents, 12½ cents, and 5 cents. The shares issued to the defendant were called class A 16 shares. The figures "16" undoubtedly refer to the contemplated period for the maturity of the shares. In addition the defendant was required to and did sign an application in which he offered to pay for the loan a premium of 25 cents a month upon each share, as provided in the articles of association, for 193 months. One hundred and ninety-three months is 16 years and 1 month, and, although this provision referred to the payments of premiums and not to the maturity of the shares, it indirectly indicates that the shares were to be matured in 16 years. I find also as a fact that the defendant was told by an officer of the company, with whom the negotiations were had, that the shares would be matured and the loan paid in 16 years. I have not the slightest doubt that this statement was made to the defendant. It is highly improbable that the defendant would have entered into an arrangement that involved the payment of $950 as a premium or bonus, and which increased the rate of interest on the existing mortgage from 5 to 6 per centum, unless moved by some consideration of benefit. The company was then paying 16 per cent. dividends upon the installments paid by the subscribers to the capital stock. If this rate of dividends was maintained, the shares would mature in 16 years. Considering the testimony of the defendant and Secretary Wakeman in the light of this probability, I have no hesitancy in deciding that the defendant was told that his shares would mature in 16 years. It becomes then a question of law whether, on all these facts, the defendant is entitled to relief.

[2] The contract between the parties was in writing. It was complete upon its face, and left no opportunity for the application of the rule that, if the contract does not cover all the relations between the parties, parol evidence may be admitted to supplement it. The contract provided that the payments should continue until the amounts thereof, together with the dividends, should equal the face of the shares. It does not guarantee any amount of dividends or specify the time when all the shares will be matured. In this respect it differs from Vought v. Eastern Building & Loan Association of Syracuse, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761, and People's Associations v. Platz, 59 App. Div. 275, 69 N. Y. Supp. 589. The elements of the agreement, although involved, were not probably stated in such a way as to be blind, and they were authorized by the statute. The case differs from Nellis v. Western Life Indemnity Co., 207 N. Y. 320, 100 N. E. 1119, cited by defendant's counsel, for in that case there was a plain agreement by the insurance company to pay certain amounts upon death, and this was attempted to be avoided, by the blindly written and ambiguous clauses contained in another part of the policy. In this case, however, the relations are expressed as plainly as the involved nature of the agreement permitted. I reach the conclusion, therefore, that the statement made to the defendant, when he took out the loan to the effect that the shares would mature in sixteen years, is not a part of the contract.

[3] Neither can I hold that this was such a fraudulent representation as avoids the contract. It is a fact that, at the time the loan was made, the company was paying dividends of 16 per cent., and the ensuing year it paid 15 per cent. If this rate had continued, the shares would have matured in 16 years. The witness for the defendant Wakeman, who was the secretary of the company, testified that he had no intention of deceiving the defendant, but that he believed that it would continue to pay 15 per cent. until the maturity of the shares. As a matter of fact, it did pay 15 per cent. until and including the year 1908, except that in three of the years it paid 14 per cent. The statement made by the secretary was a forecast of future conditions. It was a prediction or a prophecy. It involved no misrepresentation stated to be based upon past experience, as was the case in Neumann v. New York Mutual Savings Association, 17 App. Div. 72, 44 N. Y. Supp. 896. It was made without the intent to deceive, and falls within that class of statements which

involve matters of opinion, and which cannot be made the basis of a claim of fraud. A sanguine mind might believe that such predictions would be fulfilled, but one accustomed to test opinions in the light of reason would have seen their inherent improbability for the total earnings of the association were drawn from payments made by its members, and, if one gained, another must lose; and, since all premiums which were the great source of the earnings of the association came from borrowing members, the probability would be that in the long run the borrowing members would lose. The great diminution in the earnings of the company during the last five years, which has prevented the maturing of the shares, is due to the fact that the Legislature passed a statute limiting the amount of the premiums which could be charged for loans.

I reach the conclusion, therefore, that the statement made by the officer of the company at the time the loan was made is not a part of the contract; neither was it a fraudulent representation which authorized the defendant to rescind. Judgment must follow for the plaintiff, with cost.

In the other action, in which this defendant is plaintiff and this plaintiff is defendant, judgment must be for the defendant, dismissing the complaint upon the merits, but without costs, as I think that one bill of costs is amply sufficient.

Argued before JENKS, P. J., and BURR, CARR, RICH, and STAPLETON, JJ.

Max Brown, of New York City, for appellants.
Almet Reed Latson, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice Blackmar at Special Term.

---

CLARKE v. GILMORE et al.

(Supreme Court, Appellate Division, First Department. April 17, 1914.)

1. CONTRACTS (§ 234*)—CONSTRUCTION.
Where defendant agreed to institute proceedings to recover the value of stock owned by plaintiff's testator, and from the recovery, after deducting amounts actually disbursed, except for legal services, to pay over an amount equal to the price paid by the testator, defendant is entitled to deduct the amounts paid for the necessary traveling expenses of his attorneys.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1099, 1100; Dec. Dig. § 234.*]

2. CONTRACTS (§ 234*)—CONSTRUCTION.
Defendant is also entitled to his own traveling expenses, and, where he stated that his hotel expenses were $3.50 per day, it is improper for the referee to arbitrarily reduce the amount to $2, solely on the ground that it was too large.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1099, 1100; Dec. Dig. § 234.*]

3. TRUSTS (§ 219*)—ACCOUNTING OF TRUSTEES.
Defendant agreed to institute proceedings to recover the value of stock owned by plaintiff's testator, and in an action to charge him as trustee ex maleficio plaintiff sought to recover interest on the sums retained. The testator had bequeathed the income of his entire estate to his wife, and she executed a complete release of all claims for income or interest accruing on the sums retained by defendant. Held that, the action being

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
147 N.Y.S.—9